


eeplaw.com
80 Pine Street, 38th Floor
New York, New York 10005
T. 212.532.1116 F. 212.532.1176

New Jersey Office
576 Main Street, Suite C
Chatham, New Jersey 07928

January 19, 2023

**BY ECF**
Honorable Jennifer E. Willis
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Hassab El Nabi v. Tocco, et al.*, 21 CV 3768 (LAK) (JW)

Your Honor:

I am plaintiff's former counsel. I write jointly with plaintiff's current counsel in accordance with the order dated January 11, 2023 to respectfully address the issue of the charging lien.

Prior Counsel's Position

At the outset, I respectfully note that the undersigned and Baree N. Fett (the attorneys asserting the lien) have substantial experience prosecuting and defending § 1983 cases in the federal courts. We are former government lawyers who each served as Assistant Corporation Counsel defending the NYPD and other agencies in the Special Federal Litigation Division of the New York City Law Department. Since entering private practice, we have spent over a decade representing mostly indigent plaintiffs in such cases. *See Martinez v. City of New York*, 330 F.R.D. 60, 71 (E.D.N.Y. 2019) ("The Court recognizes that counsel in the instant case [the undersigned and Ms. Fett] have collectively litigated over 716 civil rights cases in this district and in the Southern District of New York, and both have extensive trial experience…"); *Jackson v. Nassau Cnty.*, ___ F.Supp.3d ____, 18 CV 3007 (JS) (AYS), 2022 WL 1460241, *4 (E.D.N.Y. May 9, 2022) (awarding fees to the undersigned at $500 per hour and noting that "counsel has extensive experience in civil rights litigation"). In the past approximately ten months, the undersigned and Ms. Fett have, *inter alia*, resolved a client's high-profile wrongful conviction claims for nearly $18 million,[1] obtained a $600,000 jury verdict[2] and disqualified defense counsel in another important wrongful conviction case.[3]

[1] *See* Weiser, Ben, N.Y. TIMES, Dec. 2, 2022, *Man Exonerated in 1990 Subway Killing of Tourist to Get $18 Million* (accessible at: http://bit.ly/3XFwbG2).
[2] *See Martinez v. City of New York*, 16 CV 79 (NRM) (CLP) (E.D.N.Y.) (DE #237) (reflecting verdict).
[3] *See Galloway v. Cnty. of Nassau*, 589 F. Supp. 3d 271, 274 (E.D.N.Y. 2022); Wester, Jane, N.Y. LAW JOURNAL, Mar. 7, 2022, *US Judge Upholds Law Firm's Disqualification From Defending Nassau Co., Police in Civil Rights Suit* (accessible at: http://bit.ly/3IUUsE0).

The undersigned and Ms. Fett were engaged by plaintiff to represent him in the instant claims in August 2020. Plaintiff's current counsel assumed representation in July 2022 and the matter was settled approximately four months later. This firm thus represented plaintiff for approximately eighty five percent of the lifespan of his claims.

Our representation was competent and comprehensive and, indeed, laid the groundwork for quick resolution of the matter by substitute counsel. As contemporaneous billing records previously produced to substitute counsel reflect, this firm coordinated a successful defense strategy during plaintiff's criminal prosecution that included engaging and working with immigration counsel to ensure that plaintiff's criminal charges did not adversely affect his status. Alongside those efforts, we prepared and filed a notice of claim and defended plaintiff at a pre-litigation hearing held pursuant to G.M.L. § 50-h. We then drafted a detailed complaint and commenced an action in New York County Supreme Court alleging state and federal causes of action. When defendants removed the matter to this Court, we promptly appeared, navigated the case through the § 1983 Plan, attempted mediation and then conducted document discovery, obtaining and reviewing a significant amount of material, including body camera footage. Although the City of New York initially categorized the case as no-pay because a defendant alleged physical injury, we spoke with defense counsel in an effort to move the City off of that position. During our representation, we also advanced $1,596.39 in recoverable costs.

Unfortunately, there were a series of events which took place which culminated with my firm's being replaced by substitute counsel. Because those facts are confidential pursuant to Rule 1.6 of the New York Rules of Professional Conduct, I cannot volunteer those facts in a publicly filed document. But to be clear, my firm was not discharged "for cause." However, should there be any questions concerning this issue, we stand ready to make an *in camera* submission to Your Honor to document the relevant facts. Suffice it to say that the difficulties faced by my firm culminated in plaintiff hiring substitute counsel, which we welcomed with the hope that it would increase the likelihood that plaintiff's claims would be successful. To this end, when substitute counsel contacted us, we went out of our way to make our file electronically available to them and to bring them up to speed.

I respectfully submit that under these circumstances, my firm possesses a valid and enforceable charging lien under Judiciary Law § 475. While we believe we are rightly entitled to 85% or more of the fees and costs given our meaningful and lengthy stewardship of the case, we are willing to negotiate to resolve the lien without formal briefing. However, we have had what we can only describe as a disappointing experience in attempting to resolve this matter directly with substitute counsel. We appreciate the Court's assistance.

<u>Current Counsel's Position</u>

In early June of 2022, the plaintiff reached out to our firm with concerns about how his pending lawsuit was being handled and that he wanted our firm to take over his representation. Upon reviewing the docket, we saw that the fact discovery was due to close by August 11, 2022 and no discovery was had taken place but for the exchanging of initial disclosures. After speaking with the Plaintiff, I called prior counsel to discuss the matter. During our discussion, prior counsel informed me that he intended to withdraw as counsel because he was having issues with the Plaintiff and

preferred to be substituted as opposed to leaving the plaintiff without counsel before Judge Kaplan. Prior counsel also informed me that the City refused settlement talks and had taken a no-pay position on the case. I asked prior counsel if he would seek a charging lien and he said "no".

I then retrieved the complaint from the docket and reviewed it with Plaintiff. The Plaintiff became upset that the sexual assault he experienced at the hands of the NYPD was mentioned as "groping" but the complaint was otherwise void of any specificity of what actually happened to him. As a result of my conversation with prior counsel, I spoke to my co-counsels about whether or not we would take on a case in such a compromising and risky posture.

Based upon the information we had, we decided to take over the matter and on June 30, 2022 I filed a substitution of counsel form on the docket. Within one week, we served the City with Discovery Demands and Interrogatories. I then spoke with the plaintiff at great length about his mental and emotional state and had him examined by an expert psychologist. Next, I convinced the City to agree to an extension of time to complete discovery. While the motion was granted, Judge Kaplan permitted only 60 days to complete fact discovery. That meant we would have to receive timely responses to our demands and interrogatories, evaluate them for deficiencies, conduct depositions, locate the John Does- one of whom actually engaged in the sexual assault of Plaintiff, and serve post EBT demands all with the hopes that the City would not withhold documents that would prompt motion practice. Thus, prior counsels' claim to have done 85% of the work is incorrect as substantial and material discovery remained outstanding at the time our firms took over. Had the work performed by prior counsel been sufficient enough, surely settlement would have been reached without substitution. Based upon our expertise, discovery demands, preliminary expert report and conversations with opposing counsel, the City was now willing to discuss settlement. We filed a joint letter requesting referral to mediation and a stay of discovery to ensure the time to complete fact discovery would be tolled. From there, we were assigned to your honor for settlement and after several hours over two days of mediation, we were able to successfully settle the matter.

Immediately after notice was filed on November 10, 2022 on the docket reporting settlement, we received an email from prior counsel asserting a charging lien. His recollection as to our prior conversations differed from mine. While prior counsel may not recall saying he would not seek a lien, my co-counsels recall me relaying that same information during our internal calls prior to agreeing to take on the case. Also, prior counsel remained on the docket and continued to receive every notice and status report on settlement knowing that the City had moved from the initial no-pay position. At no time did prior counsel reach out to inform me that he had changed his mind and was now asserting a lien considering the case was about to settle. Our position is that prior counsel was terminated for cause and is not entitled to a charging lien.

After prompting prior counsel for his billing statement, we received it on December 15, 2022. Needless to say, there are multiple entries we feel do not warrant compensation and can discuss those in detail during the mediation session along with other confidential information exchanged during the previous mediation session and conversations between plaintiff and his prior counsel that were relayed to us. We attempted to negotiate some amount for prior counsel fees but were not successful. While our position is that prior counsel is not entitled to any fees because he was terminated with cause, we are willing to engage in settlement talks to resolve the matter.

Thank you for your attention to this matter.

Respectfully submitted,

/s/

Gabriel P. Harvis Tahanie Aboushi

cc: All Counsel