**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
ABDELRAHMAN HASSAB EL NABI,

                        Plaintiff,

               -against-

CITY OF NEW YORK, SERGEANT
MATTHEW TOCCO, POLICE OFFICER
STEPHEN CENTORE, DEPUTY
INSPECTOR ELIAS NIKAS, and JOHN
AND JANE DOE,

                    Defendants.
----------------------------------------------------------------X

**ORDER**

**21-CV-3768 (LAK) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

      Before the Court is a motion by the Plaintiff's former attorney of record, Gabriel P. Harvis of Elefterakis, Elefterakis & Panek ("Prior Counsel"), to enforce a charging lien. For the following reasons, the motion is GRANTED in part and DENIED in part as the Court concludes that attorney's fees are to be split 60% to Substitute Counsel for a total of $44,000 and 40% to Prior Counsel for a total of $29,333.33.

## BACKGROUND

      On November 1, 2022, Plaintiff Abdelrahman Hassab El Nabi ("Plaintiff"), now represented by the law firms Cohen & Green P.L.L.C and Aboushi Law Firm (collectively "Substitute Counsel"), reached a settlement with Defendants City Of New York, Sergeant Matthew Tocco, Police Officer Stephen Centore, Deputy Inspector Elias Nikas, and John and Jane Doe (collectively "Defendants"). On May 25, 2023, "Prior Counsel, filed the instant motion to enforce charging lien, seeking to

recover from the settlement disbursements and attorneys' fees. Dkt. No. 61 ("Motion" or "Mot."). Substitute Counsel filed a response on July 10, 2023. Dkt. No. 68 ("Response"). Prior Counsel filed a reply in support of the Motion on July 24, 2023. Dkt. No. 72 ("Reply"). On August 3, 2023, Substitute Counsel filed a sur-reply in opposition of the Motion ("Sur-Reply"). Dkt. No. 77. On January 24, 2024, Substitute Counsel filed a letter motion to supplement the opposition to Prior Counsel's Motion ("Letter Motion")[1]. Dkt. No. 79. On January 25, 2024, Prior Counsel filed a letter motion in response to the Letter Motion ("Letter Response"). Dkt. No. 80.

## DISCUSSION

Broadly, under New York law, an attorney may claim a charging lien against a former client which is an attachment to specific funds that constitute the client's recovery. N.Y. Judiciary Law § 475 (McKinney). The issues before the Court are whether there was an oral agreement not to assert an attorney's lien between Prior Counsel and Substitute Counsel, whether Prior Counsel was terminated for cause which would bar the exercise of a lien, whether an evidentiary hearing is needed to determine if Prior Counsel was terminated for cause, whether Substitute Counsel's

---

[1] Substitute Counsel submitted a letter motion to supplement the opposition to Prior Counsel's Motion. Local Civil Rule 6.1(b) requires motion reply papers to be served within seven days after service of the answering papers. Local Civil Rule 7.1(e) prohibits letter motions unless authorized by a judge's individual practices or order issued in a particular case. This Court's Individual Practice Rule II(A) requires parties to request permission before filing sur-replies. Therefore, this Letter Motion will not be considered because it is untimely, and Substitute Counsel did not request permission prior to filing.

objection is "untimely", and how attorney's fees should be split among Prior Counsel and Substitute Counsel.

Prior Counsel filed the subject Motion to enforce a charging lien under Judiciary Law § 475. The parties' briefing discusses three issues.

First is whether Prior Counsel's charging lien is barred by contract principles. Substitute Counsel argues that it is because Prior Counsel verbally agreed not to assert an attorney lien.

Second is whether Prior Counsel was terminated for cause. Substitute Counsel argues that Prior Counsel was terminated for cause, and therefore has lost the right to enforce a charging lien. Prior Counsel argues they were not terminated for cause because they "diligently represented the [P]laintiff and attempted to prosecute the action responsibly." Mot. at 6.

Third is what portion of attorney's fees Prior Counsel is entitled to, if any. Prior Counsel argues he should "be awarded 80% of the fee ($58,660.80), along with $1,596.39 of advanced client costs…for a total award of $60,257.19" because he represented Plaintiff for over 84% of the case lifespan. Mot. at 9. Substitute Counsel argues that Prior Counsel is not entitled to 80% of the attorney fee because the quantum meruit value of Prior Counsel's services are minimal. Response at 7.

## I.    Substitute Counsel's Assertion that Oral Contract Bars Attorney's Lien

Substitute Counsel argues that when the instant case was transferred, Prior Counsel verbally agreed not to assert a lien. Substitute Counsel provides emails

between Substitute Counsel Aboushi Law Firm and Prior Counsel as well as emails between Aboushi Law Firm and Substitute Counsel Cohen & Green P.L.L.C. The emails between Aboushi Law Firm and Prior Counsel memorialize discussions about Prior Counsel being substituted as attorney of record for this case. The emails between the two Substitute Counsel firms, Aboushi Law Firm and Cohen & Green P.L.L.C., are the only emails that mention Prior Counsel considering not asserting an attorney's lien. Substitute Counsel asserts that this alleged verbal agreement was an oral contract because "all of the 'words and deeds' of the parties constitute obvious signs that everyone understood [Prior Counsel] had waived any lien." Response at 2. Substitute Counsel argues the consideration for this contract was Prior Counsel avoiding a potential malpractice claim if the case was dismissed after failure to serve discovery. Response at 2. Substitute Counsel also argues that their appearance in the case would be partial performance of the oral contract.

Prior Counsel represents that while he agreed to withdraw from representation of Plaintiff and that Substitute Counsel would assume the case, but disputes that he agreed not to assert an attorney's lien.

Of note, in their Sur-Reply, Substitute Counsel argues that Prior Counsel never denied the existence of an oral argument by a sworn affidavit and only denied the accusation in the unsworn Reply. Therefore, he failed to submit evidence rebutting the existence of the agreement to waive the attorney's lien. Sur-Reply at 1. Substitute Counsel asserts that Prior Counsel's "failure to submit any evidence or

contest the validity of the [oral] contract…leaves no fact dispute." Sur-Reply at 1. Under FRCP Rule 11 (4), "by presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." This Court finds Prior Counsel's denials in the Reply sufficient evidence rebutting the existence of the agreement to waive an attorney's lien and he was not required to deny said claims in a sworn affidavit.

Courts weigh the following factors when considering the existence of an oral contract:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1985).

As to the first factor, the circumstances around an oral contract may be shown by "oral testimony or by correspondence or other preliminary or partially complete writings." Id. at 81. Here, the actual email correspondence between Prior Counsel

and Substitute Counsel shows no indication that there was a discussion about attorney's liens. Dkt. No. 73, Attach. 7. Those emails only demonstrate that Prior Counsel was agreeing to withdraw and for Substitute Counsel to take over the case. While there was no express reservation of the right not to be bound in the absence of a writing, Substitute Counsel has simply not provided evidence to show that Prior Counsel was even contemplating rescinding his right to an attorney's lien, nor evidence that Prior Counsel and Substitute Counsel negotiated this issue.

As to the second factor, if an oral contract existed, Substitute's counsel's appearance on behalf of Plaintiff would constitute partial performance. As to factor three, there is a dispute about the terms of any oral agreement. Substitute Counsel asserts the Parties' agreed on the following terms: (i) Prior Counsel is able to withdraw from the case; (ii) Prior Counsel would not assert an attorney's lien; and (iii) Substitute Counsel would assume the case and prevent Plaintiff losing on summary judgment. Prior Counsel asserts the only agreement was that Substitute Counsel would take over the case.

Most consequentially, as to factor four, agreements regarding attorney's fees or the right to an attorney's lien are the types of contracts that are usually committed to writing. Prior Counsel's written retainer agreement with Plaintiff provides that if Prior Counsel withdraws, he has the right to seek an attorney's lien and that any modifications to that agreement **must** be in writing and signed by both parties. Dkt. No. 73, Attach. 1, at 4 ("If Client and Attorneys agree to change any term in this

agreement, such change must be in writing and signed by both Client and Attorneys."). The only way to amend Prior Counsel's retainer agreement would have been in writing signed by both Plaintiff and Prior Counsel.

"Oral promises, and oral modifications to written agreements, are either barred by the statute of frauds, or unenforceable." 7 N.Y. Jur. 2d Attorneys at Law § 256 (citing Irving O. Farber, PLLC v. Kamalian, 16 A.D.3d 506, 791 N.Y.S.2d 609, 610 (2005). "The parties' written retainer agreement, which provided, inter alia, that any modifications must be in writing and signed by both parties, was unambiguous"). General Obligations Law § 15–301(1) provides that "[a] written agreement ... which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought." Any oral modification to Prior Counsel's retainer agreement with Plaintiff was unenforceable, unambiguously barred by the retainer agreement itself and barred by the statute of frauds.

Further, given that Substitute Counsel understood the importance of memorializing the notice of substitution of attorney in writing (Dkt. No. 21), they should have known the importance of memorializing an agreement not to assert an attorney's lien in writing as well. Substitute Counsel has failed to provide compelling evidence to show that Prior Counsel submitted to an oral contract not to assert an attorney's lien. Even if such an oral agreement existed, it would not be enforceable

because a clear written contract between Plaintiff and Prior Counsel is already binding on the issue of Prior Counsel's right to assert a lien.

## II.    Termination for Cause

Substitute Counsel argues that Prior Counsel is also barred from asserting a charging lien because he was terminated for cause. Prior Counsel argues he was not terminated for cause because he "diligently represent[ing] the [P]laintiff and attempted to prosecute the action responsibly." Mot. at 6. Prior Counsel insists there was no breach of duty or unreasonable conduct, but merely a personality conflict between Prior Counsel and Plaintiff, "which cannot support a finding of termination for cause as a matter of law." Mot. at 7 (citing <u>Realuyo v. Diaz</u>, 98-CV-7684 (GBD), 2006 WL 695683, *7 (S.D.N.Y. Mar. 17, 2006)).

Substitute Counsel rejects the argument that Prior Counsel was terminated because of personality conflicts with the Plaintiff. Substitute Counsel asserts Prior Counsel's actions meet the requirements of a for cause termination in several respects and is therefore not entitled to assert a lien. Response at 7.

### A.    Untimely Objection

The first threshold issue is whether Substitute Counsel can, at this juncture, properly argue that Prior Counsel was terminated for cause or whether the Court's prior ruling controls. During a February 9, 2023 hearing, the Court made an oral finding of fact that Prior Counsel was not terminated for cause. Before the conference, the Court had an opportunity for an in-camera inspection of Prior Counsel's retainer agreement, billing records and email communications. During the hearing, the Court

asked Substitute Counsel if they had anything to contribute, and they declined to object or make any argument contrary to that ruling.

Prior Counsel argues that Substitute Counsel's current request for a hearing is untimely because they were required to raise any issues or request for reconsideration of the February 9, 2023 order within fourteen days of the conference per Local Civil Rule 6.3. Mot. at 4. Additionally, Prior Counsel argues that "none of the justifications that might warrant merits adjudication of an untimely reconsideration are present in this case." Mot. at 5 (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). Further, Prior Counsel asserts "there is no manifest injustice, or indeed any injustice at all, in the procedure and evidence used by the Court in conducting its inquiry. Nothing prevented substitute counsel from objecting or offering additional evidence – they simply failed to do so." Mot. at 6.

Substitute Counsel argues the request for a hearing is not untimely because "(1) there was no motion to be resolved in front of the [C]ourt at the February 9 settlement conference; (2) no written or appealable order was given; and (3) the court only reviewed evidence submissions from one party." Response at 2-3. Substitute Counsel argues the statement regarding Prior Counsel not being terminated for cause made at the February 9 conference was not a final decision, but a comment, and it is reasonable for Substitute Counsel "to believe adversarial testing of any 'finding' was still to come." Response at 3.

Although there was no written order, this Court's statements in the February 2023 hearing should be considered an order. See Fed. R. Civ. P. § 72 Advisory Committee Notes Subdivision (a) ("An oral order read into the record by a magistrate will satisfy the requirement" for orders on non-dispositive matters) Parties are required to serve and file objections within 14 days if there are issues with a magistrate judge's order or proposed findings. Fed. R. Civ. P. 72(a). Further, "[a] party may not assign as error a defect in the order not timely objected to. If [plaintiff] wished to contest the magistrate judge's determination…it had to file objections with the district court within 14 days." LCS Grp., LLC v. Shire Dev. LLC, No. 20-2319, 2022 WL 1217961, at *5–6 (2d Cir. Apr. 26, 2022). If a party fails to timely contest a magistrate judge's determination, they waive any arguments on the issue. Id.

Despite the conference on this matter being held on February 9, 2023, Substitute Counsel did not file objections, seek reconsideration or move for a conference for clarification of the Court's statements until March 29, 2023, well past the 14-day requirement. Substitute Counsel may not now object to this Court's finding if they did not file a timely objection or request for clarification.

However, the Court will continue with its analysis in an abundance of caution.

**B. Evidentiary Hearing**

The second threshold issue is whether an evidentiary hearing is required to determine if Prior Counsel was terminated for cause or whether a decision can be made on the papers.

10

Prior Counsel argues no evidentiary hearing is necessary because the Court is already familiar with the relevant facts in this dispute and given the numerous submissions and two conferences, "an ample record exists to adjudicate this dispute." Mot. at 1-2.

Substitute Counsel argues an evidentiary hearing is needed to clarify the issues of fact and determine if Prior Counsel was terminated for cause. Response at 1. Substitute Counsel disputes the argument that Prior Counsel was terminated because of personality conflicts with the Plaintiff, but rather because of false promises made to Plaintiff and inadequate representation[2].

"Generally, a hearing is required to determine if an attorney was discharged for cause...[h]owever, when presented with detailed submissions, courts routinely decline to hold such a hearing." Kovach v. City Univ. of New York, No. 13-CV-7198 (LGS), 2015 WL 3540798, at *4 (S.D.N.Y. June 4, 2015); see also Ramgoolie v. Ramgoolie, No. 16-CV-3345 (VEC) (SN), 2020 WL 6135056, at *2 (S.D.N.Y. Oct. 16, 2020) ("Courts in this Circuit routinely assess charging liens without holding hearings."). This Court is already familiar with the facts of the underlying matter, the charging lien dispute, and has received detailed submissions on this matter. Therefore, an evidentiary hearing is not necessary.

---

[2] Additionally, Substitute Counsel alleges Prior Counsel verbally waived an attorney's lien and argues there is no way to resolve this issue without a hearing. Response at 2. However, as discussed above in section I. the analysis of whether there was an oral contract and whether it can alter a written agreement is primarily a legal and not a factual one.

### C. Analysis of Basis for Termination

 "A former attorney's right to a charging lien depends on whether the attorney was terminated with or without cause. If an attorney is discharged for cause, he may not claim a charging lien and is not entitled to legal fees." Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 263 (2d Cir.2004) (citing Teichner by Teichner v. W & J Holsteins, Inc., 64 N.Y.2d 977, 979, 489 N.Y.S.2d 36, 478 N.E.2d 177 (1985).

New York courts have held that an attorney has been dismissed "for cause" when one or more of the following were present:

> (1) the attorney's failure to perform under the employment contract; (2) their lack of diligence in so performing; (3) their lack of ordinary skill or care in so performing; (4) their making of demands on the client which violate the terms or exceed the scope of the contract; (5) their taking of actions contrary to the client's interests or objective; (6) their indulging in some sort of unprofessional conduct while handling the client's affairs; (7) their venting of personal or economic hostility toward the client; and (8) their loss of the client's trust and confidence.

Kamel v. Prisco, No. 23-CV-00033 (JLR), 2025 WL 846135, at *3 (S.D.N.Y. Mar. 18, 2025) (quoting Love & Madness, Inc. v. Claire's Holdings, LLC, No. 21-CV-01913 (SLC), 2022 WL 5138806, at *4 (S.D.N.Y. Oct. 5, 2022).

Substitute Counsel argues Prior Counsel has met several of these factors, during his representation of Plaintiff including: (1) lacking diligence and care in representing Plaintiff; (2) taking actions contrary to client's objective; and (3) losing the client's trust and confidence.

Substitute Counsel contends Prior Counsel's representation lacked diligence and care because he failed to take steps to identify Doe defendants, risking punitive damages, failed to adhere to discovery deadlines, missed expert deadlines, and failed to serve discovery requests before discovery expired. However, when Substitute Counsel assumed representation of Plaintiff as a client in June 2022, the discovery deadline had not yet passed. The fact discovery deadline was August 11, 2022, and deadline for all discovery and motions for summary judgement was November 11, 2022. At the time Prior Counsel withdrew, there was still time to conduct discovery and still the possibility of a discovery deadline extension.

Further, Prior Counsel's emails show he was diligently communicating with Defendants' counsel and with Plaintiff about discovery. For example, there was body-worn camera footage of Plaintiff's arrest. In email communication, Plaintiff was adamant he wanted to have possession of that footage. Dkt. No. 64, Attach. 2, at 2. Prior Counsel's emails with Defendant's counsel demonstrate that he was diligently attempting to obtain that footage including discussions with opposing counsel to have the "confidential" designation of the bodycam footage removed so that it could be viewed by Plaintiff.

Substitute Counsel contends Prior Counsel took actions contrary to Plaintiff's objective and lost the client's trust and confidence. Plaintiff specifically wanted a sexual assault claim included in the complaint, however Prior Counsel only claimed NYPD "groped him." Courts have held that "differences of opinion concerning strategy do not constitute cause for discharging an attorney." Costello v. Kiaer, 278 A.D.2d 50, 50, 717 N.Y.S.2d 560 (1st Dep't 2000) (citing Milner v. City of New York, No. 10-CV-9384 (JGK) (GWG), 2012 WL 3138110, at *12 (S.D.N.Y. Aug. 2, 2012), report and recommendation adopted, No. 10-CV-9384 (JGK), 2012 WL 6097111 (S.D.N.Y. Dec. 10, 2012)). Prior Counsel's conduct doesn't constitute a failure to properly represent Plaintiff's interests but rather a difference of opinion between attorney and client and Prior Counsel exercising his strategic judgment.

Substitute Counsel also argues that Prior Counsel failed to properly explain damages, lacked communication with Plaintiff, and made false promises that Plaintiff would receive a green card in connection with his case. However, Prior Counsel's emails show that he attempted to stay in contact with Plaintiff, to keep him updated on the status of the case, and to maintain an amicable attorney-client relationship. Emails also reflect Prior Counsel often attempted to call Plaintiff, who eventually refused to take Counsel's calls and stopped responding to his emails. Substitute Counsel has not presented evidence other that Plaintiff's affidavit showing Prior Counsel promised Plaintiff a green card. Pointing to the retainer agreement, Prior Counsel argues that Plaintiff was never promised a green card. Dkt. No. 73, at

6. The Plaintiff's retainer agreement is clear that Prior Counsel's representation was limited to the civil rights matter. The retainer makes no reference to representation for immigration matters. After considering the submitted declarations and exhibits, the Court finds that Prior Counsel did not promise Plaintiff a green card. See De La Cruz Rosas v. Just Salad 60 Third LLC, No. 18-CV-7342 (JGK) (BCM), 2023 WL 5423982, at *3 (S.D.N.Y. Aug. 4, 2023) (A court can make a credibility finding based on affidavits and documents submitted to the court.).

As previously discussed, the February 9, 2023 ruling was not timely objected to and therefore controls, but based on the submissions, this Court would reach the same conclusion that that Prior Counsel's actions did not rise to the level for him to be terminated for cause.

## III.    Portion of the Fee Prior Counsel Should Be Awarded

Substitute Counsel also argues that even if a charging lien is asserted, they are entitled to the lion's share of attorney's fees because their work on this case, including securing an extension on the discovery deadline and retaining an expert to assess Plaintiff's emotional damages is the reason Defendants changed their no-pay position and ultimately settled the matter. This Court already established in the February 9, 2023 conference that neither Prior Counsel nor Substitute Counsel are the reason that the Defendants changed their no-pay position and decided to settle. The Court held a settlement conference on October 11, 2022 and again on November 1, 2022. During each conference, this Court spoke confidentially with Defendants'

Counsel. During the November 1 conference, Defendants' Counsel disclosed the reasoning for Defendants move from its previous no-pay position and to a new willingness to settle the case. It was made clear to this Court during this confidential meeting that the reason was not a result of any effort of Prior Counsel nor efforts of Substitute Counsel. This is confirmed in Defendants' Counsel Brian Francolla Declaration[3]. Dkt. No. 73, Attach. 9.

The settlement was a result of Defendants' internal investigation, therefore, neither Prior Counsel nor Substitute Counsel's quality of performance was dispositive in resolving this matter.

### a. Quantum Meruit Analysis

In assessing legal fees on a quantum meruit basis, there are certain factors to be considered: "(1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the results obtained." Sequa Corp. v. GBJ Corp., 156 F.3d 136, 148 (2d Cir. 1998).

### i.    Difficulty of the Matter

---

[3] Substitute Counsel's Sur-Reply claims Defendants' counsel Brian Francolla's Declaration (Dkt. No. 73-9) waives privilege and puts the mediation sessions and Defendant's process at issue. Sur-Reply at 1. Mr. Francolla's Declaration says he agrees with the Court's description at the February 9, 2023 conference of the circumstances surrounding the City's change in settlement posture. The Court's description in the February 9, 2023 transcript does not disclose the content of why the City changed its position, and the settlement conference where that information was disclosed was confidential. None of Prior Counsel's submissions, including the Francolla Declaration, disclose the reason why the City changed settlement positions. Therefore, privilege was not waived, and Defendants' counsel is not required to disclose privileged information.

Although civil rights and police brutality claims can be difficult cases to litigate in federal court, this matter did not reach a level to be considered particularly difficult. This case settled without any extensive motion practice, discovery exchanged other than initial required disclosures, or depositions taken.

### ii.    Nature and Extent of the Services Rendered

Prior Counsel filed the complaint, exchanged the initial required disclosures per Section 1983 Plan, attempted to resolve a discovery dispute with Defendants' counsel, and attempted to remain in contact with Plaintiff regarding updates on the case. This Court does note that the submissions show a lapse in progress in the case or contact with Plaintiff from the time Prior counsel informed Plaintiff of updated discovery schedule on February 17, 2022 (Exhibit 10 to Harvis Dec., Dkt. No. 64-10) until May 29, 2022, when Plaintiff contacted Prior Counsel asking for an update in the case and expressing frustrations. (Exhibit 11 to Harvis Dec., Dkt. No. 64-11). Substitute Counsel was able to get an extension on the discovery deadline, served discovery demands on Defendants, acquired an expert witness for Plaintiff and negotiate the settlement agreement.

### iii.    Time Reasonably Expended on the Services

Prior Counsel emphasizes the amount of days of representation. Prior Counsel asserts he represented Plaintiff for 694 days, or 83% of the case's lifespan, and Substitute Counsel represented Plaintiff for 134 days, or 17% of the case's lifespan. Prior Counsel argues that because he represented Plaintiff for roughly 80% of the

lifespan of the case, he is entitled to 80% of the attorney's fees. Substitute Counsel does not dispute that Prior Counsel represented Plaintiff for 80% of the lifespan of the case but argues that during the time Prior Counsel represented Plaintiff, the only work he did was file a complaint, defend a 50h hearing, and any other time entries did not have any value to the case and therefore are not compensable. Prior Counsel's time records reflect 24.34 hours plus $1,596.39 in fees and expenses. Substitute Counsel's time records reflect 58.6 hours collectively plus $2,800 in fees and expenses.

### iv.    Quality of Performance of Counsel

Prior Counsel makes no argument about the quality of their representation. Substitute Counsel argues Prior Counsel's work was of no significant value to the case, and contributed negatively to the value of the claim, therefore there was no qualitative value of the services rendered. Substitute Counsel refers to the fact that Defendants remained in a no-pay position, failed to serve discovery demands or expert disclosure, and speculates that the Court would have granted a summary judgment motion by the City as evidence that Prior Counsel's performance was of low quality. Substitute Counsel attributes the fact that they were able to secure an extension on the discovery deadline and retain an expert to assess Plaintiff's emotional damages to the reason Defendants changed their no-pay position and ultimately settled the matter. This Court already established in the February 9, 2023 conference that neither Prior Counsel nor Substitute Counsel are the reason that the Defendants changed their no-pay position and decided to settle. This is confirmed in Defendants' counsel Brian Francolla Declaration. Dkt. No. 73-9. Therefore, neither

Prior Counsel nor Substitute Counsel's quality of performance was essential in resolving this matter.

### v.    Qualifications of Counsel

Prior Counsel, former government attorneys for Corporation Counsel and Federal Litigation Division of NYC Law Department, argues their qualifications include previously defending the NYPD and other agencies, substantial experience prosecuting and defending § 1983 cases in federal courts, over a decade representing indigent plaintiffs, litigating over 700 civil rights cases, extensive trial experience, and just in the past 10 months: inter alia resolved wrongful conviction claims for nearly $18 million, obtained $600,000 jury verdict and disqualified defense counsel in a wrongful conviction case. Dkt. No. 62, at 8. Prior Counsel seems to be adequately qualified for this matter. Substitute Counsel does not discuss her qualifications in her briefing, but she is the named partner of her firm specializing in civil rights. Dkt. No. 78, at 1.

### vi.    Amount at Issue

Prior Counsel is seeking $58,660.80, 80% of the attorney's fee, plus $1596.39 in additional fees for a total of $60,257.19.

### vii.    Results Obtained

This case ultimately settled for $220,000. However, it is important to note that although Substitute Counsel attended the settlement conferences and represented Plaintiff in obtaining this amount, neither Substitute Counsel nor Prior Counsel are

the reason Defendants decided to change their no-pay position and ultimately settle the case for the amount agreed upon.

### b. Contingent Fee Calculation

In determining the contingent fee award for a former attorney, courts base the award "on his or her proportionate share of the work performed on the whole case." Cruz v. Olympia Trails Bus Co., No. 99CIV10861(JSR)(HBP), 2005 WL 3071473, at *2 (S.D.N.Y. Nov. 14, 2005) (internal citations omitted). In assessing an attorney's proportionate share, courts consider similar factors to the quantum meruit analysis above (see Section V. supra) including: "the time and labor spent by each, the actual work performed, the difficulty of the questions involved, the skills required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution...the actual work performed, the difficulty of the questions involved, the skills required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution" Id. at 3-4.

Considering the relative number of hours spent by Prior Counsel and Substitute Counsel on the case, the routine nature of the work performed by Prior Counsel and Substitute Counsel, and the fact that neither Prior Counsel nor Substitute Counsel had any greater significance in work that led to settlement of this matter, the Court concludes that attorney's fees are to be split 60% to Substitute Counsel for total of $44,000 and 40% to Prior Counsel for a total of $29,333.33.

## CONCLUSION

For the reasons stated above, the motion is GRANTED in part and DENIED in part as the Court concludes that attorney's fees are to be split 60% to Substitute Counsel for total of $44,000 and 40% to Prior Counsel for a total of $29,333.33.

**The Clerk of Court is respectfully requested to close Dkt. Nos. 61 and 79.**

SO ORDERED.

DATED:    New York, New York
              April 22, 2025

_Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge